UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN STANLEY,** | ) | **CASE NO. 1:08CV2149** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| **DELUXE FINANCIAL SERVICES** | ) | |
| **INC., et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon Plaintiff's Motion to Remand the action, which was removed by Defendants from the Cuyahoga Court of Common Pleas on the basis of diversity jurisdiction, back to state court. For the following reasons, the Court DENIES the Motion to Remand because all non-diverse defendants have been fraudulently joined.

**I. FACTS**

Plaintiff John Stanley ("Stanley") is a citizen of the state of Ohio and was at all relevant times an employee of the Defendant corporations: Deluxe Financial Services, Inc., Deluxe Business Forms and Supplies, Inc., and Deluxe Corporation (collectively "Deluxe"). Deluxe is incorporated in, and thus a citizen of, Minnesota. The individual Defendants, Kenneth Spearing ("Spearing") and Thomas Michael Kinsella ("Kinsella") are citizens of the state of Ohio.

On June 16, 2004, while employed by Deluxe at its Streetsboro, Ohio facility, Stanley was working as a press operator on a Didde-type check printing machine. As part of the process

of printing checks on the press, the rollers of the press required occasional cleaning.  In an effort to perform that cleaning manually, Stanley was using a rag to clean the rollers of the machine while the machine was fully operational and the rollers were moving.  The rag became caught in the rollers, pulling the rag and Stanley's hand into the machine.  As a result, Stanley received a severe injury to his hand.

On June 9, 2006, Stanley filed an action in the Cuyahoga County Court of Common Pleas against Deluxe, Spearing, and Kinsella, alleging an employment intentional tort.  Stanley alleged that he was trained in the operation of the press by Deluxe's designated trainers, Dean Brown and Steve Hall, who instructed him that it was an accepted practice to clean the moving rollers of a press with a rag.  Further, Stanley alleged that Deluxe, Spearing, and Kinsella were aware of this dangerous practice, but condoned the practice and allowed it to continue.  In support of that contention, Stanley first alleges that Spearing, as Deluxe's Custom's Department Supervisor and Shift Supervisor, implemented the training method and thereby Spearing, and through him Deluxe, acquiesced to the dangerous process.

Stanley also points to a safety article Kinsella, in his role as Deluxe's Safety Manager, wrote after Stanley's injury.  Stanley claims the article demonstrates that Kinsella, and through him Deluxe, were aware of previous injuries resulting from employees cleaning moving rollers.  Thus, Stanley claims Kinsella and Deluxe were aware of the substantially certain risk of injury from the practice but continued to allow or impliedly require employees to encounter that risk.

As part of what Stanley alleges was an effort to settle the case, Spearing and Kinsella were dismissed as defendants in the original action.  Thereafter, Deluxe moved for a change of venue to Portage County.  Stanley then voluntarily dismissed the original action on February 29,

2008. Next, on August 6, 2008, Stanley refiled the Complaint in Cuyahoga County, again naming Deluxe, Spearing, and Kinsella as defendants. On September 5, 2008, Defendants removed the action from Cuyahoga County Court of Common Pleas, on the basis of diversity jurisdiction. In the Notice of Removal, Defendants acknowledged that there is not complete diversity because Stanley, Spearing, and Kinsella are all citizens of the state of Ohio. Nonetheless, Defendants argued that the citizenship of Spearing and Kinsella should be disregarded, for purposes of this Court's subject matter jurisdiction, because Spearing and Kinsella were fraudulently joined. On October 6, 2008, Stanley in turn filed a Motion to Remand the action back to the Cuyahoga Court of Common Pleas, arguing that Spearing and Kinsella were not fraudulently joined and complete diversity does not exist to support this Court's jurisdiction over the action.

## II. LAW AND ANALYSIS

### A. Standard of Review

A defendant may remove a case from state court and into federal district court if the district court has original jurisdiction over the action. The statute governing removal, 28 U.S.C. § 1441, contains an explicit requirement that the action completely satisfy some basis for original jurisdiction by the federal courts.

In cases not involving federal law or the United States Constitution, the basis of federal jurisdiction over private actions arising under state law is diversity jurisdiction. While the United States Constitution provides the outermost limits of federal district court subject matter jurisdiction based on diversity of citizenship, Congress chose to further circumscribe that jurisdiction. "The district courts shall have original jurisdiction of all civil actions where the

matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). It has been established precedent for over two hundred years that a district court can only exercise diversity jurisdiction when the opposing parties are *completely* diverse; in other words, no plaintiff may be a citizen of the same state as any defendant. *Strawbridge v. Curtiss*, 7 U.S. 267, 267-68 (1806); *Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir. 2005).

Notwithstanding the requirement of complete diversity, a plaintiff cannot evade federal subject matter jurisdiction by denominating non-diverse defendants against which plaintiff has no possibility of recovery; joinder of such jurisdiction-defeating defendants is considered fraudulent and will not hinder a district court from exercising original jurisdiction. *Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999); *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999). The plaintiff's motive in joining the non-diverse defendant is immaterial in determining whether the defendant's joinder was fraudulent. *Jerome-Duncan*, 176 F.3d at 907. Rather, to establish fraudulent joinder "the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne*, 183 F.3d at 493. But if there is a "colorable basis for predicting that a plaintiff may recover against non-diverse defendants," then the court is required to remand the action to the state court from which is was removed. *Id.*; *Jerome-Duncan*, 176 F.3d at 907. Put differently, "the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (citations omitted).

The party seeking removal to federal court bears the burden of establishing the existence

of complete diversity sufficient to support subject matter jurisdiction. *Alexander*, 13 F.3d at 948-49; *Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989). Likewise, if alleged, the removing party bears the burden of establishing fraudulent joinder. *Alexander*, 13 F.3d at 949. "[A]ll disputed questions of fact and ambiguities in the controlling ... state law" must be resolved in favor of the non-removing party. *Coyne*, 183 F.3d at 493; *Alexander*, 13 F.3d at 949. While the removing party bears a heavy burden, that burden is not insurmountable. The Sixth Circuit permits the removing party to present evidence, including affidavits and deposition testimony, in an effort to demonstrate that the non-removing party has no colorable basis for recovery under the applicable state law. *In re Welding Rod Prods. Liab. Litig.*, No. 1:03-CV-17000, 2004 WL 1179454, at *2 (N.D. Ohio May 21, 2004). Thus, "the district court can employ a summary judgment-like procedure that allows it to pierce the pleadings and examine affidavits and deposition testimony for evidence of fraud or the possibility that the plaintiff can state a claim under state law against a nondiverse defendant." *Id.* (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 311 (5th Cir. 2002)).

**B. Stanley Does Not Have a Colorable Basis of Recovery Against Spearing or Kinsella**

While there is diversity of citizenship between Stanley and Deluxe, it is an undisputed fact that Stanley, Spearing, and Kinsella are all citizens of Ohio. As such, the Defendants cannot remove this action to federal district court unless they demonstrate that both Spearing and Kinsella have been fraudulently joined. Stanley's employment with Deluxe and the accident that forms the basis for this action occurred in Ohio; the parties all agree that the substantive law of the state of Ohio governs this dispute. As discussed above, to demonstrate fraudulent joinder,

Defendants must show that on the basis of the factual evidence taken in the light most favorable to Stanley, there is no reasonable basis to predict that Ohio law would allow recovery against either Spearing or Kinsella.

### 1. Fellow Employee Liability for Intentional Torts under Ohio Law

The causes of action available to Stanley are limited because his injury occurred in connection with his employment. Because Stanley's injury occurred at work, it generally falls within the purview of Ohio's worker's compensation scheme set out at Ohio Revised Code §§ 4123.01 *et seq*. An employer who complies with the requirements of the worker's compensation scheme by paying into the system is immune from common-law and statutory claims arising out of employee injuries covered by the system. Ohio Revised Code § 4123.74. Likewise, that immunity is extended to fellow employees who cause injury to a worker's compensation claimant. Ohio Revised Code § 4123.741.

It has been settled law for some time that the employer's statutory immunity from liability under section 4123.74 does not extend to intentional torts committed by the employer against the employee. *See generally Fyffe v. Jeno's, Inc.*, 59 Ohio St. 3d 115 (Ohio 1991). Although the issue is less settled than *employer* liability for intentional torts, some of the Ohio appellate courts (including the appellate district from which this case was removed) have held that fellow *employee* immunity under section 4123.741 also does not extend to intentional torts committed by a fellow employee against the worker's compensation claimant. *LaCava v. Walton*, No. 69190, 1996 WL 325274, at *2-3 (Ohio App. Ct. 8th Dist. June 13, 1996); *Stockum v. Rumpke Container Serv., Inc.*, 21 Ohio App. 3d 236, 237 n.1 (Ohio App. Ct. 1st Dist. 1985). Under *Coyne*, the Court is obligated to resolve all ambiguity in state law in favor of Stanley, the

non-removing party. 183 F.3d at 493. Therefore, for purposes of this jurisdictional analysis, the Court finds Ohio law allows injured workers a cause of action against fellow employees for intentional torts, notwithstanding section 4123.741.

### 2. Applicable Legal Standard for Intentional Torts Committed by Fellow Employee

*What* the applicable standard is for intentional torts committed by a fellow employee is even less clear than *whether* Ohio law allows such a cause of action. Traditionally, 'intentional tort' is not itself a cause of action but a broad category of conduct involving 'intentional' injury, as distinguished from 'accidental' torts that require only negligence or recklessness. Instead, 'intentional tort' is usually defined in terms of discrete causes of action, each of which protect a particular interest; for example: harmful battery protects the interest in bodily integrity, assault protects the interest in freedom from fear of bodily harm, trespass protects the interest in private property, and false imprisonment protects the interest in freedom of movement. Each intentional tort is a unique animal, with its own particular elements that must be proven to show liability and its own particular defenses. It is abundantly clear from the facts in this case that Stanley cannot make out a prima facie case under any of the traditionally defined intentional torts.

Stanley instead frames his claim under the novel employment intentional tort created by the Ohio Supreme Court. In the seminal case of *Blankenship v. Cincinnati Milacron Chemicals, Inc.*, 69 Ohio St. 2d 608 (Ohio 1982), Ohio first recognized that when an employer commits an intentional tort against its employee, the injury does not arise out of the employment relationship itself and is, thus, free from the statutory immunity provided by the worker's compensation

scheme.[1] Through a progression of cases, employer liability for intentional torts expanded beyond the traditional intentional torts. *See e.g.*, *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St. 3d 100 (Ohio 1988); *Kunkler v. Goodyear Tire & Rubber Co.*, 36 Ohio St. 3d 135 (Ohio 1988); *Pariseau v. Wedge Prods., Inc.*, 36 Ohio St. 3d 124 (Ohio 1988). Ultimately, in *Fyffe*, the Ohio Supreme Court set out the precise contours of an intentional tort committed by an employer against its employee:

> (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.

59 Ohio St. 3d at 118.

The explicit language of the *Fyffe* standard makes the new cause of action applicable to intentional torts committed by the *employer*. Nothing in *Fyffe* or its progeny ever states that this new cause of action is applicable as against a *fellow employee*. To impose this standard on fellow employees requires substituting the word 'employee' for the word 'employer.' Moreover, the required elements relate to knowledge and power that the average employee would lack vis-a-vis a fellow employee. While *LaCava* and *Stockum* permit fellow employee liability, it is not clear that they extend liability beyond the realm of the *traditional* intentional torts. *Stockum*

---

[1] Here, the parties have argued extensively about the proper role of 'scope of employment' to a determination of liability. The Ohio Supreme Court has made it clear that 'scope of employment' is not part of the cause of action. *Brady v. Safety-Kleen Corp.*, 61 Ohio St. 3d 624, 634 (Ohio 1991). Instead, as *Blankenship* explains, all intentional torts are per se outside of the employment relationship. 69 Ohio St. 2d at 613. Thus, conduct outside the 'scope of employment' is not an *element* of but the *justification* for liability in the face of the statutory immunity.

-8-

alone shows any indication of such a move by Ohio courts.  There, the court applied the knowledge and substantial certainty standards of *Fyffe*, but the opinion is confusing because there were two defendants, the employer and the fellow employee.  *Stockum*, 21 Ohio App. 3d at 238.  *Stockum* involved a fellow employee, operating a vehicle without back-up signals, who ran over the plaintiff's decedent; if the court truly meant to apply the *Fyffe* standard, it is inexplicable why summary judgment for the fellow employee-defendant was reversed because it would appear impossible for the plaintiff to meet the third element by showing that the fellow employee "required" the decedent to do anything.

Given this discrepancy, it appears likely that *Stockum* is simply written poorly and the *Fyffe* cause of action is applicable only against an employer, not against a fellow employee. Nonetheless, the authority is unclear.  Likewise, the parties' arguments are both based on the implicit assumption that *Fyffe* provides the applicable standard.  None of the traditional torts are remotely applicable, leaving Stanley's only hope of recovery against Spearing and Kinsella, if any, under the *Fyffe* cause of action.  Again, the Court is obligated to resolve all ambiguity in state law in favor of Stanley, the non-removing party.  *Coyne*, 183 F.3d at 493.  Therefore, despite the seeming inapplicability to fellow employee intentional torts, the Court finds, *solely* for the purposes of the jurisdictional analysis, that *Fyffe* provides a cogent cause of action against a fellow employee.

### 3. Applying the *Fyffe* Standard to the Facts of This Case

Assuming *arguendo*, for the purposes of the jurisdictional analysis, that *Fyffe* provides Stanley with a cause of action against Spearing and Kinsella, as set out below Stanley cannot meet any of the elements of the *Fyffe* cause of action.  Therefore, Stanley demonstrates no

reasonable basis for the Court to predict that Ohio law might impose liability on the facts involved and Defendants have met their burden of showing that Spearing and Kinsella were fraudulently joined.

### a. Spearing and Kinsella Had No Knowledge of the Dangerous Process

Substituting the word 'employee' into the *Fyffe* standard, the first element of the tort is "knowledge by the [fellow employee] of the existence of a dangerous process, procedure, instrumentality or condition within its business operation." 59 Ohio St. 3d at 118. The dangerous process at issue here is wiping moving ink rollers on a printing press with a rag. While Stanley's Complaint alleges that Spearing and Kinsella were aware that Stanley was wiping off the moving rollers with a rag, the undisputed evidence shows that neither Spearing nor Kinsella were aware that Stanley was doing so.

Knowledge of the dangerous process cannot be inferred or imputed to Spearing or Kinsella even if Stanley's direct instructor trained him in the dangerous process. Neither Spearing nor Kinsella directly trained Stanley on the operation of the printing press. (Stanley Dep. at 153). Rather, Stanley was trained by Dean Brown and Steve Hall. *Id.* Likewise, neither Spearing nor Kinsella ever directed Stanley to clean the rollers of the running printing press with a rag. *Id.* at 178-79, 197. Although Stanley alleges that Spearing implemented the training method by which Stanley was shown the dangerous process of wiping moving rollers, the unrebutted evidence is that Spearing did not create the training for the press on which Stanley was injured; Spearing's role was limited to consulting with the direct trainers to see generally how the new employees were doing. (Spearing Dep. at 14-16). Moreover, Spearing's unrebutted testimony was that, to his knowledge, press operator's had been instructed not to

-10-

clean machines while running and not to stick anything into the presses while they were running. *Id.* at 18, 20-22. Even if Dean Brown or Steve Hall instructed Stanley to wipe the moving rollers when they trained Stanley, Brown and Hall were acting as employees or agents of Deluxe not Spearing; thus, any misdeeds or inadequate training can only be imputed, at most, to Deluxe itself.

Nor is there any evidence that Spearing or Kinsella ever saw Stanley or anyone else wiping the rollers of a moving press. Spearing testified that he had never seen an employee wipe the rollers of a press while moving. *Id.* at 23. While Stanley testified that Spearing "probably" saw him clean the press while it was running (Stanley Dep. at 160), a plaintiff's inability to recall pertinent events and speculation on what may have occurred is insufficient to create a genuine issue of material fact in light of specific evidence to the contrary. *Wysong v. City of Heath*, 260 Fed. Appx. 848 (6th Cir. 2008). When pressed, Stanley indicated that he could not recall any incident in which he was certain that Spearing saw him clean the press while operational. (Stanley Dep. at 160). In contrast, Spearing testified that he did not recall ever seeing Stanley or *anyone else* wipe down the press while moving. (Spearing Dep. at 23). In light of this evidence, there is no genuine issue of material fact that Spearing never saw Stanley wipe down the rollers while the press was running.

Stanley also focuses on an introduction to a safety article Kinsella wrote after Stanley's injury as evidence of Kinsella's knowledge of the dangerous process. The section of the article reads:

> Over the last 6 years we have had multiple incidents involving employees getting their fingers and hands caught in machine rollers while they were trying to clean the rollers with a rag and the machine running. The rag gets pulled in between the nip points and the hand follows thus causing some pretty

-11-

nasty and painful injuries.

(Stanley Aff. & Attach.).  This evidence is inapposite for two reasons.  First, it is undisputed that Kinsella wrote the introduction to the article *after* Stanley's injury.  As such, the article does not illuminate what knowledge, if any, Kinsella had *prior* to Stanley's injury.  The article sheds no light on when and how Kinsella became aware of any previous injuries.[2]  The knowledge of the dangerous process required by the tort refers to the defendant's knowledge before the injury, not after.  That Kinsella was aware that Stanley was cleaning moving rollers with a rag, after Stanley was injured while doing so, is irrelevant to establish the required antecedent knowledge.  Second, when questioned about the article during deposition, Kinsella testified that the article was not completely accurate and that the other two injuries of which he was aware, aside from Stanley, did not involve the same type of press and did not involve cleaning rollers.  (Kinsella Dep. at 53-59).  That clarification remains unrebutted and thus, the article proves nothing about Kinsella's prior knowledge of the dangerous process in question.  Instead, when questioned, Kinsella indicated he had no knowledge of press operators being trained to wipe off moving rollers with a rag.  *Id.* at 76-77.

Therefore, the undisputed evidence shows that Spearing and Kinsella were not aware that

---

[2] The existence of previous incidents may go to *Deluxe's* prior knowledge of the dangerous process because knowledge by a corporate agent or officer is imputed to the corporation.  *Kreller Group, Inc. v. WFS Fin., Inc.*, 155 Ohio App. 3d 14, 29 (Ohio App. 1st Dist. 2003).  Thus, regardless of when Kinsella became aware of previous injuries, the article might show that *someone* at Deluxe, and thus Deluxe itself, knew about the dangerous process before Stanley's injury because such injuries had previously occurred.  However, here and elsewhere Stanley improperly attempts to impute Deluxe's knowledge to Spearing and/or Kinsella.  While it is fundamental agency law that an agent's knowledge is imputed to his principal, the opposite is not true.  The principal's knowledge is not imputed to the agent; thus, Stanley must show that Kinsella and Stanley had *actual* prior knowledge.

any employees, including Stanley, were improperly cleaning moving rollers on the Didde-type printing press. As a result, there is no *genuine* issue of material fact and Stanley cannot meet his burden of showing knowledge of the dangerous process as required to meet the first element of the *Fyffe* cause of action.

**b. Spearing and Kinsella Had No Knowledge that Harm Would Be a Substantial Certainty**

Again, substituting the word 'employee' into the *Fyffe* standard, the second element of the tort is "knowledge by the [fellow employee] that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty." 59 Ohio St. 3d at 118. Based on the undisputed evidence, neither Spearing nor Kinsella knew that harm to Stanley was a substantial certainty.

"The proof required to demonstrate an intentional tort is beyond that which is required to prove negligence or recklessness." *Davis v. AK Steel*, No. CA2005-07-183, 2006 WL 318661, at *2 (Ohio App. 12th Dist. Feb. 13, 2006). *Davis* presents a scenario much like the one in this case; there the employer was arguably aware of the *potential* for injury created by moving rollers on a machine. *Id.* To prevent injury the employer's policy required cleaning of the rollers to be done in a non-moving "polish" mode that eliminated the dangerous nip point. *Id.* The court held that in light of that policy the employer did not have knowledge that injury was a substantial certainty because:

> [a]n employer cannot be held to know that a dangerous condition exists and that harm is substantially certain to occur when he has taken measures that would have prevented the injury altogether had they been followed. * * * [W]hen safety devices or rules are available but are ignored by employees, the requisite knowledge of the employer is not established.

*Id.* (quoting *Robinson v. Icarus Indus. Constructing & Painting Co.*, 145 Ohio App. 3d 256, 262

(Ohio App. 3rd Dist. 2001)).

Again, Spearing's unrebutted testimony was that, to his knowledge, press operators had been instructed regarding Deluxe's general safety policies, which were to shut down machines before cleaning them and not to stick anything into the presses while they were running. (Spearing Dep. at 18, 20-22). Likewise, Kinsella's unrebutted testimony was that, to his knowledge, Deluxe's general corporate safety policy and the direct training given to press operators was that the machines should be shut down before cleaning. (Kinsella Dep. at 60-61, 76-77). Stanley presents no evidence that Spearing or Kinsella told employees to disregard the corporate safety policies or were aware that trainers were doing so. As far as Spearing and Kinsella were aware, employees were trained not to clean machines while running, which would eliminate the danger posed by cleaning moving rollers. Because there is no evidence that either were aware this established safety rule was being undermined, Stanley cannot show that Spearing or Kinsella had the requisite knowledge of substantially certain harm to satisfy the second element of the *Fyffe* cause of action. Moreover, as *Davis* indicates, when the employer institutes a policy that eliminates the risk of injury, failure to properly train or ensure that the policy is being enforced amounts, at most, to gross negligence or recklessness. *Id.* at *3. Thus, as a matter of law, Spearing and Kinsella did not have the requisite knowledge to satisfy the second element of the *Fyffe* cause of action.

**c. Spearing and Kinsella Did Not Require Stanley to Perform the Dangerous Task**

Again, substituting the word 'employee' into the *Fyffe* standard, the third element of the tort is "that the [fellow employee], under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." 59 Ohio St. 3d at 118. This

-14-

final element is the most easily dealt with and the most devastating to Stanley's claims against Spearing and Kinsella.  To reiterate, as shown above there is no evidence that Spearing or Kinsella even knew that Stanley *was* cleaning press rollers while they were moving.  Regardless, even if they were aware that employees might disregard the established safety policy and clean machines while operational, Stanley's own unrebutted testimony was that neither Spearing nor Kinsella *ever* directed him to clean the press rollers with a rag while the rollers were moving. (Stanley Dep. at 178-79, 197).  Given Stanley's own undisputed testimony, there is no genuine issue of material fact that neither Spearing nor Kinsella required Stanley to perform the dangerous process.  As previously stated, any improper training by Dean Brown or Steve Hall cannot be imputed to Spearing or Kinsella because Brown and Hall were employees or agents only of Deluxe.  Therefore, as a matter of law Stanley cannot meet the third element of the *Fyffe* cause of action.

### III.  CONCLUSION

As set forth above, based on the undisputed evidence in this case there is no genuine issue of material fact and as a matter of law Stanley cannot meet any of the required elements of a *Fyffe* employment intentional tort against either Spearing or Kinsella.  Applying the "summary judgment-like procedure" approved in *Welding Rod*, there is no reasonable basis to conclude that Ohio law would allow Stanley to recover against Spearing or Kinsella.  Because Stanley does not have a colorable claim against Spearing or Kinsella, the Court concludes that they were fraudulently joined and their citizenship is immaterial to the Court's determination of diversity jurisdiction.  Therefore, because the remaining corporate Defendants are of completely diverse citizenship from Stanley, the Court holds it has subject matter jurisdiction over this matter,

removal was proper, and remand to state court is DENIED.

**IT IS SO ORDERED**

**April 2, 2009**  /s/ Christopher A. Boyko
Date  CHRISTOPHER A. BOYKO
 United States District Judge